WARREN J. RYON and EDNA A. RYON, complainants-respondents,

*v.*

GUARANTEE TRUST COMPANY et al., defendants-appellants.

[Submitted October term, 1934.   Decided January 10th, 1935.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Sooy, who filed the following opinion:

"This is a motion to strike the answer filed by the defendants.

"At the argument, counsel for defendants suggested that there was no allegation in the bill supporting a right in complainants, as *cestuis que trustent,* to maintain the suit against their trustees, the defendants, and while this objection did not appear to be seriously urged, the court permitted an amendment, setting forth complainants' inability to get relief by favorable action on the part of the trustees.

"The bill discloses that the complainants are the children of Edward C. Ryon, deceased, and they are residuary legatees under the provisions of Ryon's will. Ryon died December 15th, 1932, and the defendants Guarantee Trust Company and Louis B. Ryon duly qualified as executors on December 27th, 1932, and have since and still are acting as such.

"The executors filed an inventory and appraisement on February 16th, 1933, which showed, *inter alia,* a deposit at the time of Ryon's death, in the Guarantee Trust Company, of $17,645.49.

"On February 23d, 1933, the Guarantee Trust Company, by appropriate authority of the commissioner of banking and insurance of this state, froze its assets and thereafter, under proper authority, said trust company reorganized under a preferred stock plan, by virtue of provisions of chapter 116, *P. L. 1933.* Said act excepted from its application 'claims of depositors or other creditors which, under existing law, are entitled to full and immediate payment.'

"Complainants contend that the deposit aforesaid, 'upon the proving of the will and qualification by the executors, became and was a trust account in the hands of the Guarantee Trust Company as executor,' and protected by the provisions of chapter 50 of the laws of 1927, which provides, *inter alia,* as follows:

" 'That any Bank or Trust Company organized under the laws of this State and authorized to act as Trustee, Executor, etc., shall

carry all funds deposited or held in trust by it awaiting investment, in a separate account, and may deposit the same in such bank or trust company and such funds shall not be used by the Bank or Trust Company in the conduct of its business, unless it shall first set aside in its trust department United States bonds or other securities approved by the commissioner of banking and insurance, both as to the amount and character thereof, and that the owners of the trust funds shall have a lien upon said bonds in addition to their claim against the estates and assets of said Bank or Trust Company.'

"Complainants further aver that it was the duty of the trust company and the co-executor 'to keep the funds of the estate unmingled with its own assets, unless it complied with the act of 1927 above recited;' that the executors have disregarded their duty and 'have attempted to discharge the estate's right to said deposit by accepting preferred stock of the Guarantee Trust Company in settlement and payment of the estate's claim for the $17,645.49 deposit, have made such entries on their books and said defendants refuse to comply with complainants' request that they account for this money as cash, and that pending such accounting, they comply with the provisions of chapter 50 of the laws of 1927.'

"Complainants further aver that 'said proposed exchange of cash belonging to its trust by Guarantee Trust Company for its own stock, is illegal and violates every principle of trusts and equity, and this matter is one particularly cognizable by the court of chancery.'

"The answer admits all of the factual averments of the bill of complaint as above set forth, other than as contained in paragraph 7. Now, while the averment of the complaint in this paragraph is that 'the said deposit of $17,645.49 was the property of the estate of deceased' and there is a denial of the entire paragraph, I take it that by defendant's denial, they did not intend to deny that the deposit was, in fact, the property of the estate, but that they do deny that the deposit 'became and was a trust account' as therein alleged and 'subject to chapter 50.' This is apparent from defendants' admissions contained in its answer, to the effect that at decedent's death the deposit was in the trust company and that on February 16th, 1933, defendants inventoried it as such, so that

I conclude that the defendants make their denial to this paragraph based on their 'further answer by way of plea,' which 'further answer' reads as follows:

" 'Further answering the bill of complaint by way of plea, defendants say that it was without legal right to transfer the fund referred to in the bill or in anywise deal with the same until a waiver had been procured from the inheritance tax bureau, and that notwithstanding diligence on its part to procure the same from said bureau, it had not been procured at the time the deposits with it had become frozen, and it denied the right to pay depositors except in the way provided by the acts referred to in the bill, before said waiver had been obtained. By reason thereof the deposit in question became subject to said acts, and the estate was and is not entitled to be paid except by way of preferred stock under the reorganization plan referred to in the bill and approved by the commissioner of banking and insurance.'

"I take it that the defendants rely entirely on this plea (so called) for their defense, and that if this portion of the answer is stricken, it must necessarily follow that I find that the deposit was subject to chapter 50 of the *P. L. 1927* aforesaid, and that the denial that the $17,645.49 was on deposit will be eliminated.

"The two statutes under consideration should be construed so that both may stand, if possible, and to so construe them seems to me to follow a fair reading of their provisions, having in view the end sought by each act.

"Each statute deals with an entirely different subject-matter. The earlier statute, chapter 294, section 12 of *P. L. 1926,* deals with restrictions on the action of banks and trust companies with reference to money in its possession, on deposit, 'belonging or standing in the name of a decedent,' and prohibits the bank from transferring such a deposit to the executors, excepting on ten days' notice to the comptroller of the treasury, and also prevents the transfer of the deposit to the executors without retaining the amount necessary to pay tax and interest, but this statute does not at all prescribe the manner in which the trust company shall 'carry

all funds deposited or held in trust by it.' The purpose of the act was to assure payment of inheritance taxes to the state.

"Chapter 50 of *P. L. 1927* provides that a trust company authorized to act as executor 'shall carry all funds deposited or held in trust by it,' in a separate account, and may deposit the same in such bank or trust company, with a further proviso that the funds shall not be used unless the bank or trust company shall set aside in its trust department bonds, &c. The purpose of this act was to protect trust funds.

"I am unable to see any difficulty in compliance by the trust company with the provisions of both acts. Under the Inheritance Tax act of 1896, the moneys on deposit to the credit of decedent could not be paid out or turned over to the executors for use without the formality of notice to the comptroller, retention of the amount of the tax and interest, and waiver. Under the Trust act of 1927, a trust company, as executor, was required to keep the funds represented by the deposit in a separate account or deposit bonds. Surely, compliance with one act did not prevent compliance with the other. The transfer of the account from the general funds of the bank into a 'separate account' did not violate the Inheritance Tax act, which prevented a transfer to the executors for their use before compliance with that act. The transfer of the account to a 'separate account' was merely a bookkeeping entry and could not aid in the frustration of the purpose of the legislative enactment with reference to inheritance tax and, by so doing, the trust company not only did not violate the Tax act but complied with its duty, as provided by the other legislative enactment.

"What the trust company now attempts to do is to deprive the *cestuis que trustent* of the protection of the Trust Company act under cloak of legislation that never was intended to produce any such unfair result.

"The trust company accepted the trust and if it violated the trust statute it is liable to *cestuis que trustent* and cannot meet that liability by offering preferred stock under its reorganization plan, it being admitted that the act under which

the trust company was reorganized excepted from its application 'claims of depositors or other creditors which, under existing law, are entitled to full and immediate payment.'

"The result is that the motion to strike out the answer will prevail, with the understanding that my interpretation of the denial of paragraph 7 as heretofore outlined, does not conflict with the intention of the defendant in making its denial thereof."

*Mr. John D. McMullin,* for the respondents.

*Messrs. Cole & Cole (Clarence L. Cole),* for the appellants.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons expressed in the opinion delivered by Vice-Chancellor Sooy in the court of chancery, with the following reservation: We consider that the transfer by an executor banking institution of the decedent's funds on deposit with it at the time of the death to the separate account designated in the statute involves more than a mere bookkeeping entry; but this does not affect the conclusion reached by the vice-chancellor for the reason that, in our opinion, the trust company had, between December 27th, 1932, when it qualified as an executor, and February 23d, 1933, when it froze its assets, reasonable time within which to take the steps incident to the transfer.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ. 13.

*For reversal*—None.